**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEWEY AUSTIN BARNETT, II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-cv-00708-SEP |
| | ) | |
| BRENDA SHORT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM AND ORDER**</u>

Before the Court is Plaintiff Dewey Austin Barnett, II's Amended Complaint.  *See* Doc.
[6].  For the reasons set forth below, the Court dismisses this action without prejudice.

FACTS AND BACKGROUND

Plaintiff is a self-represented litigant who is currently incarcerated at the Eastern
Reception, Diagnostic and Correctional Center.  At all times relevant to this lawsuit, though, he
was incarcerated at the Jefferson County Jail in Hillsboro, Missouri.

In its August 23, 2022, Order, for the reasons set forth therein, the Court ordered Plaintiff
to file an amended complaint within 30 days.  *See* Doc. [3].  Plaintiff received a copy of the
Court's prisoner civil rights form and instructions on how to amend his complaint.  The Court
advised Plaintiff that an amended complaint would replace his original complaint.  *Id.*

On September 22, 2022, Plaintiff filed his Amended Complaint.  *See* Doc. [6].  The Court
treats the Amended Complaint as the operative pleading in this case.  *See In re Wireless Tel. Fed.
Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005).  The Amended Complaint is
handwritten on a Court-provided 42 U.S.C. § 1983 complaint form and names both Jefferson
County and Jail Administrator Brenda Short as defendants.  Doc. [6] at 1.  In the Amended
Complaint, Plaintiff sues Jail Administrator Short in her official and individual capacities, *id.* at
2, and brings a "deprivation of religion" claim.  *Id.* at 3.

Plaintiff asserts that on March 15, 2021, he "was denied religion (Holy Bible)" when he
went into administrative segregation.  *Id.*  He further states that "Jefferson County [was] using
[an] unconstitutional policy and failed to train employees," adding that a jail employee told him
his "constitutional right was nothing more than a privilege."  *Id.*  According to Plaintiff, the

"deprivation of religion" made him less secure "in personal security," which caused him "anxiety, stress, depression, [and] not being faithful and [obedient] . . . to the Lord God of all Creations, causing [him] to sin and be a sinner, causing guilt and shame to [his] person." *Id.* at 4.

The Court treats the two exhibits attached to the Amended Complaint as part of the pleadings.[1]  The first exhibit is an April 4, 2021, letter to Lieutenant Hoffman of Internal Affairs. *See* Doc. [6-1] at 1.  Much of the letter concerns a strip search conducted by Officer Rulo, who is not named as a defendant in the Amended Complaint.  However, Plaintiff also "brought up numerous grievances [he] filed with Brenda Short," noting that he never received replies to his appeals. *Id.* at 3.  He further states that "everything goes through Brenda Short in this jail," and that "[s]he is not handling situations in this jail correctly." *Id.*

The second exhibit is a "Prisoner Request/Grievance Form" dated March 15, 2021. *See* Doc. [6-1] at 5.  In the grievance, Plaintiff states that he was placed on lockdown on March 12, 2021, with "no property[,] no hygiene and no Bible." *Id.*  He further states that he is "a Christian" and has received pastoral visits for two years. *Id.*  Plaintiff asserts that he "was told" that he "was not allowed to have any of that stuff," but "only a mattress and blanket." *Id.* Nothing on the form indicates who answered Plaintiff's grievance, but the reply states that Plaintiff "can have nothing more than what" he has, and that his "behavior has taken away all privileges." *Id.*  The reply also states:  "Feel free to quote the constitution all you want to . . . you will not receive anything more." *Id.*

In light of those allegations, Plaintiff requests that Jefferson County's "unconstitutional policy . . . be changed to prevent further constitutional [encroachments]"; that Jefferson County "train employees [as to] what are rights and privileges"; and that Jefferson County "train employees [to] treat . . . detainees more human like and respectful." Doc. [6] at 5.  He also seeks $1.5 million in damages. *Id.*

## LEGAL STANDARD

Under 28 U.S.C. § 1915(e)(2), the Court must dismiss a complaint filed *in forma pauperis* if it is frivolous or malicious, or if it fails to state a claim upon which relief can be granted.  To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim

---

[1] *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."); *see also Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (quoting *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986)) ("[M]aterials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint.'").

for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.  Determining whether a complaint states a plausible claim for relief is a context-specific task, "requiring the reviewing court to draw on its experience and common sense." *Id*. at 679 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  The Court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *see also Twombly*, 550 U.S. at 555 ("[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))).

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  A "liberal construction" means that "if the essence of an allegation is discernible . . . the district court should construe the plaintiff's complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).  However, even pro se complaints "must allege facts, which, if true, state a claim as a matter of law." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone*, 364 F.3d at 914-15 (federal courts need not "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint").  Affording a pro se complaint the benefit of a liberal construction also does not mean that "procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

DISCUSSION

In the Amended Complaint, Plaintiff alleges that Jefferson County and Jail Administrator Short violated 42 U.S.C. § 1983 by depriving him of his First Amendment right to freely exercise his religion.  Based on the Court's previous Order, Doc. [5], and for the additional reasons set forth below, the Court dismisses this action without prejudice.

## I.  Religious Land Use and Institutionalized Persons Act

Plaintiff filed the Amended Complaint on a Court-provided 42 U.S.C. § 1983 complaint form.  He appears to bring an action under the Free Exercise Clause of the First Amendment.  To

3

the extent that the Amended Complaint can be construed as making a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), that claim fails.

RLUIPA prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution." 42 U.S.C. § 2000cc-1(a). "[T]o establish a substantial burden under RLUIPA, plaintiff must show the government action significantly constrains his religious conduct or expression, meaningfully curtails his ability to express adherence to his faith, or denies him reasonable opportunities to engage in activities that are fundamental to his religion." *Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

Plaintiff seeks both injunctive relief and monetary damages. RLUIPA does not provide for monetary damages. *See Van Wyhe v. Reisch*, 581 F.3d 639, 655 (8th Cir. 2009) (RLUIPA does not authorize monetary damages based on official capacity claims); *Scott v. Lewis*, 827 Fed. App'x 613, 613 (8th Cir. 2020) ("RLUIPA does not allow money damages against state prison officials, even where suit is against officials in their individual capacities." (citing *Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014))); *Heikkila v. Kelley*, 776 Fed. App'x 927, 928 (8th Cir. 2019) (damages are not available in the RLUIPA context). And because Plaintiff has been transferred from the Jefferson County Jail—where the alleged events occurred—to the Eastern Reception, Diagnostic and Correctional Center, *see* Doc. [4], his request for injunctive relief is moot. *See Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012) (plaintiff's RLUIPA claim for injunctive relief  was "moot" because he was transferred from the facility where the alleged violations took place).

Thus, Plaintiff's Amended Complaint fails to state a RLUIPA claim.

## II.   <u>42 U.S.C. § 1983 Claim Against Jefferson County</u>

A local governing body such as Jefferson County can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). To prevail on a § 1983 claim, a plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if a constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018); *see also Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

4

Plaintiff need not explicitly plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). But he must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). As discussed below, Plaintiff has not alleged sufficient facts to support the proposition that Jefferson County has an unconstitutional policy or custom, nor has he sufficiently alleged that the County was deliberately indifferent in training or supervising its employees.

### A.     Policy

To state a *Monell* claim based on a "policy," Plaintiff must allege that a violation of his constitutional rights resulted from an "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn*, 486 F.3d 385, 389 (8th Cir. 2007). When "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cnty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

The Amended Complaint does not identify any specific "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [Jefferson County's] governing body." Instead, Plaintiff refers to an "unconstitutional policy" without any factual elaboration. Doc. [6] at 3. A bare legal conclusion does not suffice to state a claim. *See Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) ("A pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement will not suffice." (quoting *Iqbal*, 129 S. Ct. at 1949)). Plaintiff makes no allegation that his inability to read the Bible in administrative segregation resulted from "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin*, 829 F.3d at 700. He alleges only that he "was denied religion (Holy Bible)" on March 15, 2021, when he entered administrative segregation.

Doc. [6] at 3.  That single occurrence is not enough for the Court to infer the existence of a policy.  *See Wedemeier v. City of Ballwin*, 931 F.2d 24, 26 (8th Cir. 1991) (a court cannot infer the existence of an unconstitutional policy or custom from a single occurrence).

Thus, the Amended Complaint does not state a claim that Jefferson County violated Plaintiff's constitutional rights pursuant to an unconstitutional policy.

### B.   Custom

To state a *Monell* claim based on an unconstitutional custom, Plaintiff would have to allege three elements:  First, the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees."  *See Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (quoting *Thelma D. ex rel. Delores A. v. Bd. of Educ. of Cty. of St. Louis*, 934 F.2d 929, 932-33 (8th Cir. 1991).  Second, "[d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct."  *Id*. (quoting *Delores A.*, 934 F.2d at 933).  And finally, that Plaintiff "was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation."  *Id*. (quoting *Delores A.*, 934 F.2d at 933).

Plaintiff has alleged none of those three elements.  Instead, he has described a single occurrence when he went into administrative segregation and was denied his Bible.  That one occurrence does not constitute a pattern.  Therefore, Plaintiff has not sufficiently alleged that the deprivation of his constitutional rights resulted from an unconstitutional custom.

### C.   Failure to Train

Plaintiff can bring a municipal liability claim by establishing a deliberately indifferent failure to train or supervise.  *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference").  To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights."  *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005).  A plaintiff can show that the municipality had such notice by alleging a "pattern of similar constitutional violations by untrained employees."  *See S.M. v. Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017).

6

In this case, Plaintiff asserts that Jefferson County "failed to train employees" because one of its employees said that a "constitutional right was nothing more than a privilege." Doc. [6] at 3. That is not sufficient to show deliberate indifference in the training or supervision of Jefferson County's employees. As noted above, deliberate indifference requires notice to the County, and such notice is ordinarily shown by allegations of a "pattern of similar constitutional violations by untrained employees." *S.M.*, 874 F.3d at 545. Plaintiff has alleged no such pattern. Rather, Plaintiff complains of only a single incident in which he was not allowed to have his Bible in administrative segregation. Therefore, Plaintiff has not sufficiently alleged that Jefferson County failed to train or supervise its employees.

D.   **Respondeat Superior**

To the extent that Plaintiff seeks to hold Jefferson County liable for the actions of its employees, the Court notes that the County cannot be held liable merely because it employs a tortfeasor. *See A.H. v. City of St. Louis*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under [42 U.S.C.] § 1983, a municipality . . . cannot be liable on a respondeat superior theory."). *See also Andrews v. Fowler*, 93 F.3d 1069, 1074 (8th Cir. 1996) ("A local government may not be sued under [42 U.S.C.] § 1983 for an injury inflicted solely by its employees or agents on a theory of respondeat superior.").

E.   **Dismissal of *Monell* Claim**

Because Plaintiff has failed to allege facts demonstrating that Jefferson County had an unconstitutional policy or custom, or that it was deliberately indifferent in failing to train or supervise its employees, his 42 U.S.C. § 1983 claim must be dismissed. *See Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

III.   **Official-Capacity Claim Against Jail Administrator Short**

Plaintiff has sued Jail Administrator Short in her official capacity. In an official-capacity claim against an individual, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (quoting *Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007)). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999); *see also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018)

7

(official-capacity suit against sheriff and deputy "must be treated as a suit against the County"); *Kelly*, 813 F.3d at 1075 ("A plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer[.]"); *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent.").

Plaintiff alleges that Jail Administrator Short is an employee of Jefferson County.  The official-capacity claim against Short is a claim against the County itself, her employer.  To state a claim, Plaintiff must demonstrate that Jefferson County is liable for harming him.  *See Kelly*, 813 F.3d at 1075 (to prevail on an official-capacity claim, plaintiff must establish the governmental entity's liability for the alleged conduct).  As discussed above, Plaintiff has not adequately alleged a 42 U.S.C. § 1983 claim against Jefferson County.  Therefore, the official-capacity claim against Short must be dismissed.

## IV.   Individual-Capacity Claim Against Jail Administrator Short

Plaintiff has also sued Jail Administrator Short in her individual capacity.  Individual liability in a 42 U.S.C. § 1983 case is personal.  *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017).  In other words, "[g]overnment officials are personally liable only for their own misconduct."  *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015).  As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights."  *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)); *see also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims where none of the defendants set plaintiff's bail, citing "no causal connection between any action on the part of the defendants and any alleged deprivation").  To assert an individual-capacity claim, a plaintiff must allege facts connecting the defendant to the challenged action.  *See Bitzan*, 916 F.3d at 717.  Though the Amended Complaint contains minimal factual allegations, it appears that Plaintiff attempts to hold Short liable based on her position of authority, as well as her responses to his grievances.

### A.   Supervisory Liability

8

In his Amended Complaint, Plaintiff does not directly allege that Jail Administrator Short personally denied him a Bible. Short is not mentioned at all in the "Statement of Claim."[2] Plaintiff does attach a grievance in an exhibit, stating that a Jefferson County Jail employee told him that he is not allowed to have his Bible in administrative segregation. But that exhibit is not signed by anyone, much less Short, and Plaintiff does not allege that Short was the author. Thus, construing the Amended Complaint liberally, it appears that Plaintiff attempts to hold Short accountable due to her supervisory position.

Vicarious liability does not apply to 42 U.S.C. § 1983 lawsuits. *Marsh*, 902 F.3d at 754. "[A] supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010); *see also Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) ("To state a claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution.").

Here, Plaintiff has not alleged that Short directly participated in a constitutional violation or that she failed to train her employees. Thus, to the extent Plaintiff seeks to hold Short liable in her individual capacity, that claim must be dismissed. *See Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011) ("[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." (quoting *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987))); *see also Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) ("[A] general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability.").

### B.    Grievance Claim

The only place in the Amended Complaint where Jail Administrator Short is referred to by name is in a letter to "Internal Affairs" attached as an exhibit. Doc. [6-1] at 1. Within that letter, Plaintiff states that he "brought up numerous grievances" with Short, to which she

---

[2] Naming a defendant in the caption does not suffice to assert that defendant's responsibility. *See Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (affirming dismissal of complaint where plaintiff named two defendants in the complaint, but made no factual allegations against them); *Krych v. Hvass*, 83 Fed. App'x 854, 855 (8th Cir. 2003) (affirming dismissal of complaints where plaintiff merely listed defendants and did not allege that they were personally involved in the constitutional violations).

apparently replied, and that he also filed grievance appeals, to which he received no reply.  *Id.*
That letter is not sufficient to state a claim.

The Eighth Circuit has held that, while an inmate may have "a federal constitutional
liberty interest" in "the nature of his confinement," he has no such "interest in the procedures by
which the state believes it can best determine how he should be confined."  *Kennedy v.
Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996).  In other words, "[a] prison grievance procedure
is a procedural right only, it does not confer any substantive right upon the inmates."  *Buckley v.
Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (quoting *Azeez v. DeRobertis*, 568 F. Supp. 8, 10
(N.D. Ill. 1982)); *see also Jenner v. Nikolas*, 828 F.3d 713, 716-17 (8th Cir. 2016) ("The
existence of a state-mandated procedural requirement does not, in and of itself, create a
constitutionally protected liberty interest."); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003)
("[T]here is no constitutional liberty interest in having state officers follow state law or prison
officials follow prison regulations."); *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002)
("[D]efendants' denial of [plaintiff's] grievances did not state a substantive constitutional
claim.").

Denial of, or failure to respond to, a grievance does not amount to a substantive
constitutional violation.  Thus, to the extent that Plaintiff seeks to hold Defendant Short liable in
her individual capacity for her role in the grievance process, that claim must be dismissed.

### C.   Violation of First Amendment

The Amended Complaint does not directly allege that Jail Administrator Short took any
action against Plaintiff regarding depriving him of his Bible.  Plaintiff does not allege that Short
was the individual who decided that he could not have his Bible in administrative segregation, or
even that it was she who responded to his grievance that he was not allowed to have the Bible in
administrative segregation.[3]  But even if Plaintiff had alleged that Short was personally
responsible for denying him his Bible, Plaintiff would still have failed to state a First
Amendment claim.

---

[3] In his original complaint, Plaintiff does appear to accuse Jail Administrator Short of authoring the
grievance response:  "On March 15, 2021, [plaintiff] filed a grievance to receive [his] Bible, only to be
denied because [his] Bible is a privilege in this jail and not a right according to Brenda Short."  Doc. [1]
at 15-16.  That allegation does not reappear in the Amended Complaint, which completely replaces the
original, as the Court clearly advised Plaintiff in its earlier Order.  *See* Doc. [5] at 7.  Therefore, that
allegation is deemed abandoned, but as discussed, even if it weren't, Plaintiff's claim would still fail.

The First Amendment to the United States Constitution provides, in relevant part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S. Const. amend. I.  Under the Free Exercise Clause, one has "the right to believe and profess whatever religious doctrine one desires."  *In re Kemp*, 894 F.3d 900, 907 (8th Cir. 2018) (quoting *Employment Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 877 (1990)).  "The government may not compel affirmation of religious belief, punish the expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side in controversies over religious authority or dogma."  *Id.* (quoting *Smith*, 494 U.S. at 877).

To state a First Amendment claim, Plaintiff must first assert that a defendant's action placed a substantial burden on his ability to practice his religion.  *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008); *see also Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997) ("As an initial matter, a person claiming that a governmental policy or action violates his right to exercise his religion freely must establish that the action substantially burdens his sincerely held religious belief.").  To qualify as "a substantial burden," the government policy or actions:

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004) (quoting *Weir*, 114 F.3d at 820).

In this case, Plaintiff has not alleged that his ability to practice his religion was substantially burdened.  He alleges only that he "was denied religion (Holy Bible)" on March 15, 2021.  Doc. [6] at 3.  There are no further allegations suggesting that that deprivation alone prevented him from freely exercising his religion.  Plaintiff does not allege how the deprivation of his Bible significantly inhibited or constrained "conduct or expression that manifests some central tenet of [his] individual religious beliefs," how it meaningfully curtailed his "ability to express adherence to his . . . faith," or how it denied him a reasonable opportunity to "engage in those activities that are fundamental to [his] religion."  *Murphy*, 372 F.3d at 988 (quoting *Weir*, 114 F.3d at 820).  Instead, Plaintiff leaves it to the Court to assume the centrality of the Bible to the practice of his religion.

11

Plaintiff also does not allege how long he was without his Bible, stating only that he was deprived of it on March 15, 2022.  A *de minimis* interference with his ability to read the Bible does not constitute a substantial burden resulting in a constitutional violation.  *See McCroy v. Douglas Cnty. Corr. Ctr.*, 394 Fed. App'x 325, 326 (8th Cir. 2010) ("Neither the initial confiscation of [plaintiff's] religious items, nor the two-week delay in returning them to him, rose to the level of a constitutional violation.").  *See also Masek v. Chastain*, 2018 WL 4144792, at *6-7 (E.D. Mo. 2018) (deprivation of Bible for one week was "*de minimis* and does not amount to a constitutional violation"); *Lane v. Avery*, 2018 WL 5541157, at *4 (E.D. Ark. 2018) (plaintiff's claim that he "was deprived of his Bible for an unspecified amount of time while on behavior control status" did not amount to a constitutional violation); *Harke v. Ada County Sheriffs*, 2011 WL 3679058, at *7 (D. Idaho 2011) (confiscation of plaintiff's Bible "was *de minimis* and is therefore not actionable" as such "burdens on the free exercise of religion are not of a constitutional dimension"); *Buck v. Lake County Sheriff*, 2004 WL 2983966, at *8 (N.D. Ill. 2004) (plaintiff's inability to participate in group religious services for 42 days "was too brief a period to implicate constitutional concerns").  Here, because Plaintiff does not allege anything more than the deprivation of his Bible on a single day, he has not alleged a deprivation that was greater than *de minimis*, and therefore potentially in violation of the Constitution.

Therefore, even if the Court assumes that Jail Administrator Short was personally responsible for the alleged denial of access to Plaintiff's Bible on March 15, 2021, Plaintiff still has failed to show that such a deprivation amounts to a substantial burden on his religious free exercise.  Thus, to the extent that Plaintiff attempts to hold Short liable in her individual capacity for violating his rights under the First Amendment, that claim must be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **DISMISSED without prejudice**.  *See* 28 U.S.C. § 1915(e)(2)(B).  A separate order of dismissal will accompany this Order.

**IT IS FURTHER ORDERED** that an appeal from this Order would not be taken in good faith.

Dated this 30th day of November, 2022.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE